**Marian Wallis SPIGENER, Appellant,**

v.

**Imogene Marie WALLIS, et al., Appellees.**

**No. 10–00–101–CV.**

Court of Appeals of Texas, Waco.

June 12, 2002.

Marian Wallis, Spigener, Alvarado, pro se.

Theresa Ann Gartman, Burleson, pro se.

Before Chief Justice DAVIS, Justice VANCE, and Justice GRAY.

## OPINION

REX D. DAVIS, Chief Justice.

Imogene Marie Wallis and others filed a partition suit against Marian Wallis Spigener and Rose Lynn McCullough in 1994. The trial court signed a decree in December 1997 partitioning the property and appointing a receiver to sell it. Spigener and McCullough appealed. In August 1998, we dismissed Spigener's and McCullough's appeal for want of prosecution after they failed to file a brief. Spigener now appeals the trial court's order confirming the sale of the subject property by the receiver, distributing the proceeds of the sale, and discharging the receiver.

## BACKGROUND

The trial court found in its December 1997 decree that Spigener had an undivided 1/12 interest in the subject property. The court appointed a local realtor as receiver. Because Spigener and McCullough[1] failed to supersede this decree, the receiver proceeded to market the property during the pendency of the prior appeal. The receiver filed a report with the trial court in March 1998 indicating that she had executed sales contracts with two families for the purchase of the two tracts at $2,000 per acre.

The trial court conducted a hearing on December 20, 1999 to approve the sale. Prior to considering the receiver's report, the court heard and denied a continuance motion Spigener had filed five days before and a motion to disqualify and/or recuse the judge she had filed one day later.[2]

Based on the receiver's testimony, the court approved the proposed sale.

The receiver closed the sale with the purchasers on January 6, 2000 for $66,390.00. On March 29, she filed an application for confirmation of sale and discharge. She reported that the expenses of the sale amounted to $4,888.25. She requested $3,983.40 as compensation for her services. She asked that the court distribute the net proceeds of $57,518.35 to the parties and discharge her and her surety.

Spigener filed another disqualification/recusal motion on April 14. She filed a "contest" of the receiver's application for confirmation of sale and discharge five days later.

Upon Judge Kitzman's request, the Chief Justice of the Supreme Court assigned Judge Tom Crum to hear the recusal motion, which he did on May 2.[3] See TEX. GOV.CODE. ANN. § 74.049 (Vernon 1998); TEX.R. CIV. P. 18a(c). After hearing Spigener's evidence, Judge Crum denied the motion.

Immediately following the recusal hearing, Judge Kitzman scheduled a May 16 hearing for the receiver's application for confirmation of sale and discharge. On May 9, Spigener filed a motion for Appellees' counsel G. David Davis to show his authority to act on their behalf.

At the final hearing, the trial court considered: (1) Spigener's challenge to Davis's authority to act as counsel; (2) Spigener's challenge to the receiver's authority to act; and (3) the receiver's application for confirmation of sale and

---

1. Appellees non-suited McCullough in April 1995.

2. Spigener and McCullough had filed a series of disqualification/recusal motions before the entry of the December 1997 decree. From the record, it appears that Judge Oliver S.

Kitzman was assigned in early 1996. He has presided over the case since that time.

3. The presiding judge of the administrative judicial region had previously recused himself from this suit.

discharge. After hearing evidence and argument, the trial court rejected Spigener's challenges to Davis's authority and to the receiver's authority.

Appellees requested that the trial court apply Spigener's share of the proceeds from the receiver's sale to pay court costs. The court signed an order confirming the sale, discharging the receiver, distributing the proceeds, and applying Spigener's share of the proceeds to court costs.

## SCOPE OF APPEAL

"A judicial partition involves two appealable orders." *Campbell v. Tufts,* 3 S.W.3d 256, 258 (Tex.App.-Waco 1999, no pet.); *accord Griffin v. Wolfe,* 610 S.W.2d 466, 466 (Tex.1980) (per curiam); *Thomas v. McNair,* 882 S.W.2d 870, 876 (Tex.App.-Corpus Christi 1994, no writ). By the first order, the court:

- determines "the share or interest of each of the joint owners or claimants in the real estate sought to be divided, and all questions of law and equity affecting the title to such land";

- decides whether the property is "susceptible to partition"; and if not,

- orders a sale of the property, "which sale shall be for cash, or upon such other terms as the court may direct, and shall be made as under execution or by private or public sale through a receiver."

*See* Tex.R. Civ. P. 760, 761, 770; *see also Campbell,* 3 S.W.3d at 258–59; *Thomas,* 882 S.W.2d at 876.

We discussed at some length the procedures for a judicial partition in *Campbell.* We observed:

Before rendering the first decree, the court has the authority "to adjust all equities between the parties." The court "applies the rules of equity in determining the broad question of how property is to be partitioned."

Thus, proof is made to the factfinder at trial of the existence and value of improvements to the property at the time of partition and of other equitable considerations which may warrant awarding a particular portion of the property to one of the parties. . . .

. . . .

Texas courts have uniformly held that matters decided in the first hearing cannot be challenged in an appeal from the trial court's second order. . . .

*Campbell,* 3 S.W.3d at 259 (quoting *Yturria v. Kimbro,* 921 S.W.2d 338, 342 (Tex. App.-Corpus Christi 1996, no writ)) (other citations omitted); *accord Thomas,* 882 S.W.2d at 877.

■ Bearing these considerations in mind, we must first determine which of Spigener's twelve points are properly before us in this appeal from the trial court's second order. Spigener claims in her twelve points that the judgment must be reversed because: (1) the sales price for the property was too low; (2) the court's prior determination of ownership is erroneous because Marie and Clyde Wallis did not have sufficient income to make the mortgage payments; (3) the court's prior determination of ownership is erroneous because Spigener did have sufficient income to make the payments; (4) the court failed to account for Spigener's cross-claims for back rent and maintenance expenses; (5) Judge Kitzman was disqualified and should have recused himself; (6) the judge erred by deciding his own recusal motions; (7) the judge held *ex parte* hearings and issued orders without proper notice in violation of due process and due course of law; (8) the judge engaged in *ex parte* communications; (9) the trial court improperly granted a non-suit of Rose McCullough though she had cross-claims

pending; (10) the court erred by failing to appoint counsel; (11) the receiver had no authority to act because she is not an attorney; and (12) Appellees' counsel failed to give notice of substitution.

Spigener's second, third, fourth, and ninth points concern "matters decided in the first hearing." *See Campbell*, 3 S.W.3d at 259. Thus, they cannot be challenged in this appeal. *Id.* Accordingly, we overrule them.

## ADEQUACY OF SALES PRICE

Spigener contends in her first point that the sales price of $2,000 per acre is not the fair market value of the subject property. The receiver testified that it is. Spigener states in her brief that neighboring properties are valued at $4,400 per acre. She also claims that an unidentified person or persons burned several buildings on the property "under instructions from [the receiver] and [Appellees' counsel]" who sought to lower the value of the property. Spigener presented no evidence at trial to substantiate these claims. Accordingly, we overrule her first point. *See Pfeffer v. Pfeffer*, 269 S.W.2d 436, 438–39 (Tex.Civ. App.-Galveston 1954, writ ref'd n.r.e.).

## DISQUALIFICATION/RECUSAL ISSUES

Spigener argues in her fifth point that Judge Kitzman should have disqualified himself because he had an interest in the case sufficient to warrant his disqualification under article V, section 11 of the Texas Constitution. She claims in her sixth point that the judge erred by ruling on her motions to disqualify and/or recuse

him rather than referring them to the Chief Justice of the Supreme Court.

■ A trial judge may be removed from presiding over a particular case for one of three reasons: (1) disqualification under article V, section 11 of the Texas Constitution; (2) disqualification under section 74.053 of the Government Code (applicable to assigned judges); or (3) recusal under the procedural rules for civil trials and appeals. *See In re Union Pac. Resources Co.*, 969 S.W.2d 427, 428 (Tex.1998) (orig. proceeding) (citing Tex. Const. art. V, § 11; Tex. Gov.Code. Ann. § 74.053(d) (Vernon 1998); Tex.R. Civ. P. 18a, 18b; Tex.R.App. P. 16).

■ Article V, section 11 provides in pertinent part, "No judge shall sit in any case wherein the judge may be interested.…" Tex. Const. art. V, § 11.[4] "It is a settled principle of law that the interest which disqualifies a judge is that interest, however small, which rests upon a direct pecuniary or personal interest in the result of the case presented to the judge or court." *Cameron v. Greenhill*, 582 S.W.2d 775, 776 (Tex.1979); *accord Chandler v. Chandler*, 991 S.W.2d 367, 386–87 (Tex. App.-El Paso 1999, pet. denied). A party cannot create a constitutional disqualification by filing suit against the judge. *See Cameron*, 582 S.W.2d at 776; *Blanchard v. Krueger*, 916 S.W.2d 15, 19 (Tex.App.-Houston [1st Dist.] 1995, orig. proceeding).

■ A constitutional disqualification deprives a trial judge of the authority to act. *See Davis v. State*, 956 S.W.2d 555, 558–59 (Tex.Crim.App.1997) (citing *Stine v. State*, 908 S.W.2d 429, 434 (Tex.Crim.

---

4. Article V, section 11 provides three grounds for disqualification:

> No judge shall sit in any case wherein the judge may be interested, or where either of the parties may be connected with the judge, either by affinity or consanguinity,

> within such a degree as may be prescribed by law, or when the judge shall have been counsel in the case.

Tex. Const. art. V, § 11. Spigener's disqualification challenge concerns only the first ground.

App.1995) (Meyers, J., concurring)); *Thull v. State*, 963 S.W.2d 879, 881 (Tex.App.-Texarkana 1998, no pet.).[5] "[A]ny orders or judgments rendered by a judge who is constitutionally disqualified are void and without effect." *Union Pac. Resources Co.*, 969 S.W.2d at 428. Thus, a constitutional disqualification may be raised at any stage of the proceedings and cannot be waived. *See Buckholts Indep. Sch. Dist. v. Glaser*, 632 S.W.2d 146, 148 (Tex.1982); *McCullough v. Kitzman*, 50 S.W.3d 87, 88 (Tex.App.-Waco 2001, order, pet. denied) (per curiam); *Zarate v. Sun Operating Ltd.*, 40 S.W.3d 617, 621 (Tex.App.-San Antonio 2001, pet. denied); *McElwee v. McElwee*, 911 S.W.2d 182, 186 (Tex.App.-Houston [1st Dist.] 1995, writ denied).

■ Conversely, "the erroneous denial of a recusal motion does not void or nullify the presiding judge's subsequent acts. While a judgment rendered in such circumstances may be reversed on appeal, it is not fundamental error and can be waived if not raised by proper motion." *Union Pac. Resources Co.*, 969 S.W.2d at 428. Rule of Civil Procedure 18a provides the prerequisites for a recusal motion. Among other things, such a motion must be verified and filed ten days before trial or hearing. *See* Tex.R. Civ. P. 18a(a).

Section 74.059(c)(3) of the Government Code requires a district judge to "request the presiding judge to assign another judge to hear a motion relating to the recusal of the judge from a case pending in his court" Tex. Gov.Code. Ann. § 74.059(c)(3) (Vernon 1998). Rule of Civil Procedure 18a(c) gives a trial judge two options when a recusal motion is filed. "Prior to any further proceedings in the case, the judge shall either recuse himself or request the presiding judge of the administrative judicial district to assign a judge to hear such motion." Tex.R. Civ. P. 18a(c).

■ A party who fails to file a motion which complies with Rule 18a waives the right to complain of a judge's refusal to recuse himself. *See Union Pac. Resources Co.*, 969 S.W.2d at 428; *Pena v. Pena*, 986 S.W.2d 696, 700 (Tex.App.-Corpus Christi 1998), *pet. denied per curiam*, 8 S.W.3d 639 (Tex.1999); *McElwee*, 911 S.W.2d at 186. In a similar manner, this Court and others have concluded that a trial court's obligation to either recuse himself or refer the motion to the presiding judge of the administrative judicial district "never come[s] into play unless and until a timely motion to recuse is filed." *Beard v. Beard*, 49 S.W.3d 40, 51 (Tex.App.-Waco 2001, pet. denied) (quoting *Wright v. Wright*, 867

---

**5.** The civil rules regarding recusal and disqualification apply in criminal cases. *See Arnold v. State*, 853 S.W.2d 543, 544 (Tex.Crim. App.1993); *Stafford v. State*, 948 S.W.2d 921, 924–25 (Tex.App.-Texarkana 1997, pet. ref'd); *Madden v. State*, 911 S.W.2d 236, 239 (Tex. App.-Waco 1995, pet. ref'd).

As the Court of Criminal Appeals explained in *Davis:*

While our case law has called the authority of the judge to preside a jurisdictional issue, we now disavow that characterization, because as we have explained, jurisdiction or judicial power is vested in courts, not individuals. This is not to say that judicial functions performed by one without any authority to act may not be void.

*Davis v. State*, 956 S.W.2d 555, 559 (Tex. Crim.App.1997). The civil courts have not yet embraced this distinction. *See Zarate v. Sun Operating Ltd.*, 40 S.W.3d 617, 621 (Tex. App.-San Antonio 2001, pet. denied) (disqualified judge "absolutely without jurisdiction in the case"); *Pena v. Pena*, 986 S.W.2d 696, 700 (Tex.App.-Corpus Christi 1998) (same), *pet. denied per curiam*, 8 S.W.3d 639 (Tex.1999); *McElwee v. McElwee*, 911 S.W.2d 182, 186 (Tex.App.-Houston [1st Dist.] 1995, writ denied) (same); *Gulf Maritime Warehouse Co. v. Towers*, 858 S.W.2d 556, 559 (Tex.App.-Beaumont 1993, writ denied) (same) (quoting William W. Kilgarlin & Jennifer Bruch, *Disqualification and Recusal of Judges*, 17 St. Mary's L.J. 599, 601–02 (1986)).

S.W.2d 807, 811 (Tex.App.-El Paso 1993, writ denied)); *Hawkins v. Estate of Volkmann*, 898 S.W.2d 334, 340 (Tex.App.-San Antonio 1994, writ denied); *Petitt v. Laware*, 715 S.W.2d 688, 692 (Tex.App.-Houston [1st Dist.] 1986, writ ref'd n.r.e.); *contra Johnson v. Pumjani*, 56 S.W.3d 670, 672 (Tex.App.-Houston [14th Dist.] 2001, no pet. h.); *Brosseau v. Ranzau*, 28 S.W.3d 235, 238 (Tex.App.-Beaumont 2000, no pet.); *Bourgeois v. Collier*, 959 S.W.2d 241, 246 (Tex.App.-Dallas 1997, no pet.).

■ Spigener states that Judge Kitzman was constitutionally disqualified because she filed a suit against him in November 1997 "for civil rights violations and fraud" premised on the manner in which he conducted the partition suit. She contends that this pending litigation gave him a "financial interest in the subject matter in controversy or in a party to the proceeding or an interest that could be substantially affected by the outcome of the proceedings." We disagree.

Spigener's lawsuit against Judge Kitzman did not give him a "direct pecuniary or personal interest in the result of the [partition suit]." *See Cameron*, 582 S.W.2d at 776; *Chandler*, 991 S.W.2d at 386–87. Moreover, a party cannot create a constitutional disqualification by filing suit against the judge. *See Cameron*, 582 S.W.2d at 776; *Blanchard*, 916 S.W.2d at 19. Accordingly, we overrule Spigener's fifth point.

■ Spigener complains in her sixth point that Judge Kitzman erred by failing to refer her December 1999 disqualification/recusal motion to the Chief Justice of the Supreme Court. This motion did not comply with Rule 18a because it was not

verified and was not timely filed. Thus, Judge Kitzman had no obligation to refer it the Chief Justice. *See Beard*, 49 S.W.3d at 51; *Hawkins*, 898 S.W.2d at 340; *Wright*, 867 S.W.2d at 811; *Petitt*, 715 S.W.2d at 692; *accord Union Pac. Resources Co.*, 969 S.W.2d at 428; *contra Johnson*, 56 S.W.3d at 672; *Brosseau*, 28 S.W.3d at 238; *Bourgeois*, 959 S.W.2d at 246.

■ To the extent Spigener raised a disqualification challenge in the motion (which cannot be waived), the record affirmatively reflects that Judge Kitzman is not disqualified. Thus, any error in the judge's failure to refer the motion is harmless. *See Gaines v. Gaines*, 677 S.W.2d 727, 731 (Tex.App.-Corpus Christi 1984, no writ) (failure to refer recusal motion harmless "in view of the lateness in the proceeding and the broad discretion [of the trial judge] in family law matters"); *see also McClenan v. State*, 661 S.W.2d 108, 110–11 (Tex.Crim.App.1983) (failure to refer recusal motion harmless where record affirmatively demonstrates that judge not biased). Accordingly, we overrule Spigener's sixth point.

## EX PARTE COMMUNICATIONS AND HEARINGS

■ Spigener contends in her seventh point that the trial court held *ex parte* hearings and issued orders without proper notice in violation of due process and due course of law. She avers in her eighth point that the judge engaged in improper *ex parte* communications.

The record reflects that five hearings were set in this case during the pertinent time period:[6] (1) a scheduled March 18, 1998 hearing to approve the receiver's pro-

---

**6.** As previously noted, Spigener can challenge in this appeal only those events which have occurred since the trial court rendered its partition decree in December 1997. *See*

*Campbell v. Tufts*, 3 S.W.3d 256, 259 (Tex. App.-Waco 1999, no pet.); *Thomas v. McNair*, 882 S.W.2d 870, 877 (Tex.App.-Corpus Christi 1994, no writ).

posed sale; (2) the December 20, 1999 hearing to approve the sale; (3) the May 2, 2000 hearing on Spigener's motion to disqualify/recuse Judge Kitzman; (4) a May 2, 2000 hearing in which Appellees asked Judge Kitzman to set a final hearing for the receiver's application for confirmation of sale and discharge; and (5) the May 16, 2000 hearing on the receiver's application for confirmation of sale and discharge. Spigener participated in all but the first and fourth of these hearings. The trial court elected not to hear the merits of the receiver's request to approve the proposed sale at the March 18, 1998 hearing because Spigener had not served Appellees with her pleadings. In the May 2, 2000 hearing, the trial court set a final hearing for two weeks later and took no further action.

Black's Law Dictionary defines an *ex parte* hearing as one "in which the court or tribunal hears only one side of the controversy." BLACK'S LAW DICTIONARY 517 (5th ed.1979). The March 1998 and May 2000 hearings do not meet this definition because the court did not reach the merits of the lawsuit in either hearing. *See* TEX. CODE JUD. CONDUCT, Canon 3(B)(8), *reprinted in* TEX. GOV.CODE. ANN., tit. 2, subtit. G app. B (Vernon Supp.2002) ("A judge shall not initiate, permit, or consider *ex parte* communications . . . concerning the merits of a pending or impending judicial proceeding.").

Presumably, the portion of Spigener's seventh point challenging the trial court's issuance of orders without proper notice refers to the court's denial of her continuance motion because she did not complain of a lack of notice at any other hearing

during the pertinent time period. Rule of Civil Procedure 251 requires that a continuance motion be supported by affidavit unless the motion is agreed to or a continuance is required by operation of law. *See* TEX.R. CIV. P. 251. Spigener's December 1999 continuance motion was not supported by affidavit. Appellees did not agree to a continuance. A continuance was not required by operation of law. Accordingly, we conclude that the court did not abuse its discretion in denying Spigener's continuance motion. *See Rosedale Partners, Ltd. v. Resolution Trust Corp.,* 882 S.W.2d 622, 630 (Tex.App.-Corpus Christi 1994, writ denied); *Greenstein, Logan & Co. v. Burgess Mktg., Inc.,* 744 S.W.2d 170, 179 (Tex.App.-Waco 1987, writ denied).

For these reasons, we overrule Spigener's seventh point.

Canon 3B(8) of the Code of Judicial Conduct prohibits members of the judiciary from engaging in *ex parte* communications. *See* TEX.CODE JUD. CONDUCT, Canon 3(B)(8). "*Ex parte* communications are 'those that involve fewer than all of the parties who are legally entitled to be present during the discussion of any matter. They are barred in order to ensure that "every person who is legally interested in a proceeding [is given the] full right to be heard according to law." ' " *In re Thoma,* 873 S.W.2d 477, 496 (Tex.Rev.Trib.1994, no appeal) (alteration in original) (quoting JEFFREY M. SHAMAN, ET AL., JUDICIAL CONDUCT AND ETHICS, § 6.01, at 145 (1990)); *Erskine v. Baker,* 22 S.W.3d 537, 539 (Tex. App.-El Paso 2000, pet. denied).[7]

---

7. The original source of this quotation is Canon 3(A)(4) of the American Bar Association's 1972 Model Code of Judicial Conduct, which stated, "A judge shall accord to every person who is legally interested in a proceeding, or his lawyer, full right to be heard according to law. . . ." MODEL CODE OF JUDICIAL CONDUCT Canon 3(A)(4) (1972). The current version reads slightly differently, "A judge shall accord to every person who has a legal interest in a proceeding, or that person's lawyer, the right to be heard according to law." MODEL CODE OF JUDICIAL CONDUCT Canon 3(B)(7) (1990).

According to the evidence Spigener presented at the May 2000 disqualification/recusal hearing, she was present in the courtroom during the December 1999 hearing in which she alleges Judge Kitzman engaged in *ex parte* communications. Spigener's witness testified that Appellees' counsel approached the bench in that hearing to hand Judge Kitzman papers to sign.[8] He testified that he saw counsel's "lips moving" when he was at the bench but could not hear what was being said. Spigener presented no further evidence. Because the communications of which she complains were made in open court and in her presence, we hold that they were not prohibited *ex parte* communications.

Accordingly, we overrule Spigener's eighth point.

## APPOINTMENT OF COUNSEL

Spigener alleges in her tenth point that the court erred by failing to appoint counsel to represent her. She claims that appointment of counsel was required because of her indigence and because a separate guardianship proceeding had been instituted in her behalf.

Section 24.016 of the Government Code gives a district judge the discretion to appoint counsel for a civil litigant "who makes an affidavit that he is too poor to employ counsel to attend to the cause." Tex. Gov.Code. Ann. § 24.016 (Vernon 1988); *see Travelers Indem. Co. v. Mayfield,* 923 S.W.2d 590, 593 (Tex.1996) (orig. proceeding); *Tolbert v. Gibson,* 67 S.W.3d 368, 371 (Tex.App.-Waco 2001, pet. filed); *Knie v. Piskun,* 23 S.W.3d 455, 461 (Tex. App.-Amarillo 2000, no pet.).

Appointment of counsel under section 24.016 is warranted "in some exceptional cases [in which] the public and private interests at stake are such that the administration of justice may be best served by appointing a lawyer to represent an indigent civil litigant." *Travelers Indemnity Co.,* 923 S.W.2d at 594; *Tolbert,* 67 S.W.3d at 372; *Knie,* 23 S.W.3d at 461. Spigener's case does not satisfy this test. Accordingly, we overrule her tenth point.

## RECEIVER'S AUTHORITY

Spigener contends in her eleventh point that the receiver had no authority to act because she is not an attorney. Her primary contention in this regard is that the receiver acted as "counsel for plaintiffs" by filing the application for confirmation of sale and discharge. She cites Rule of Civil Procedure 7 which provides that a party to a suit may appear "either in person or by an attorney of the court." Tex.R. Civ. P. 7.

The receiver is the agent of the trial court, not the owners. *See Payne v. Snyder,* 661 S.W.2d 134, 143 (Tex.App.-Amarillo 1983, writ ref'd n.r.e.). The Fourteenth Court of Civil Appeals in Houston identified the actions a receiver must take:

First, an application for sale, complete with definite terms, price and parties, should be filed. Then, after sufficient notice has been given to all interested parties, a hearing should be held on the application. An order of approval or disapproval of the sale by the trial court

---

8. The reporter's record of the December 1999 hearing reflects that Appellees' counsel approached the bench after the judge denied Spigener's continuance and disqualification/recusal motions with an order for the judge to sign. The judge stated on the record, "The Court finds that the order complies with the substance of the Court's ruling and said order is signed." The reporter's record also reflects that Appellees' counsel tendered a proposed written order to the judge after he approved the sale by the receiver. Counsel provided Spigener a copy of both orders during the hearing.

would follow. After reasonable notice to all interested parties, a report of the approved sale should be filed. Then, before the distribution of any funds, there should be a confirmation of the sale, to insure that the sale was in compliance with the original approval of order and to authorize distribution of the proceeds. Finally, the customary and reasonable expenses and fees should be paid.

*Harrington v. Schuble,* 608 S.W.2d 253, 256–57 (Tex.Civ.App.-Houston [14th Dist.] 1980, no writ).

The receiver did not act as "counsel for plaintiffs." She filed the reports and applications required by law. Accordingly, we overrule Spigener's eleventh point.

## NOTICE OF SUBSTITUTION OF COUNSEL

■ Spigener avers in her twelfth point that Appellees' counsel failed to give proper notice of substitution. Appellees retained G. David Davis to represent them in 1999. At the hearing on Spigener's motion to require Davis to show his authority, Appellee Ann Gartman testified that Appellees had retained Davis to represent them. Each Appellee signed an affidavit to this effect.

■ Rule of Civil Procedure 12 provides that a defendant may challenge the authority of plaintiff's counsel to act on behalf of the plaintiff.[9] *See* Tex.R. Civ. P. 12. The attorney whose authority is challenged bears the burden of proof "to show sufficient authority" to represent his client. *Id.* Davis satisfied this burden through Gartman's testimony and the affidavits of

each of his clients. Accordingly, we overrule Spigener's twelfth point.

We affirm the judgment.

---

**9.** Rule 12 does not authorize a plaintiff to challenge the authority of a defendant's counsel. *See Angelina County v. McFarland,* 374 S.W.2d 417, 423 (Tex.1964); *Nutter v. Phares,* 523 S.W.2d 292, 294 (Tex.Civ.App.-Beaumont 1975, writ ref'd n.r.e.).